UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VANESSA R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 3:18-cv-5719 JLR-JRC <br><br> REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT <br><br> NOTING DATE: April 12, 2019 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. *See* Dkts. 12, 13, 14.

After considering and reviewing the record, the Court finds that the ALJ erred by failing to resolve an apparent conflict between plaintiff's RFC and her past work, which required level three reasoning. The ALJ assigned plaintiff an RFC that indicated plaintiff could follow detailed but not complex instructions, which is level two reasoning. The ALJ also found that plaintiff

1  could return to her past work as a gate guard, which required level three reasoning. The ALJ
2  failed to resolve this conflict as required by SSR 00-4p and Ninth Circuit case law.
3        The ALJ also erred by failing to give specific and legitimate reasons for rejecting the
4  opinion of an examining psychiatrist in favor of the state agency consultant. These errors are not
5  harmless, however, there are additional factual issues to be determined.
6        Accordingly, this Court recommends that this matter be remanded pursuant to sentence
7  four of 42 U.S.C. § 405(g) for further consideration.

## PROCEDURAL HISTORY

10       Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. §
11 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. §
12 1382(a) (Title XVI) of the Social Security Act were denied initially and following
13 reconsideration. AR. 114, 115, 178, 179. Plaintiff's requested hearing was held before
14 Administrative Law Judge Allen Erickson ("the ALJ") on February 1, 2018. *See* AR. 38. On
15 April 4, 2018 the ALJ issued a written decision in which the ALJ concluded that plaintiff was not
16 disabled pursuant to the Social Security Act. *See* AR.17-19.
17       On June 29, 2018, the Appeals Council denied plaintiff's request for review, making the
18 written decision by the ALJ the final agency decision subject to judicial review. AR. 1; *see* 20
19 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's
20 written decision in September, 2018. Dkt. 6.  Defendant filed the sealed administrative record
21 regarding this matter ("AR.") on November 20, 2018. *See* Dkt. 10.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## BACKGROUND

Plaintiff, Vanessa R., was born in 1956 and was 59 years old on the alleged date of disability onset of October 30, 2015. AR. 116. Plaintiff has a GED and attended cosmetology school. AR. 337. Plaintiff has past relevant work as a driver and gate clerk. AR. 337. She stopped working because of her conditions. AR. 336.

Plaintiff filed her claim for disability alleging severe impairments of rotator cuff injury, back injury, hip injury, PTSD, and anxiety. AR. 116-17. According to the ALJ, plaintiff has at least the severe impairments of "left shoulder tendon tear/adhesive capsulitis/degenerative joint disease; lumbar spine degenerative disc disease and degenerative joint disease; status post right shoulder surgery; cervical spine degenerative disc disease; and major depressive disorder." AR. 23.

## DISCUSSION

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ erred in assessing the nature of plaintiff's past work as a gate guard which is incompatible with plaintiff's RFC in terms of reasoning level; (2) Whether the ALJ erred by failing to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles

under SSR 00-4p; (3) Whether the ALJ erred in rejecting the opinion of examining psychiatrist Dr. Moslin; and (4) Whether this case should be remanded for a calculation of benefits. Dkt. 12, p. 1-2.

### I. Whether plaintiff's past work is consistent with the reasoning level the ALJ assessed in the RFC.

Plaintiff alleges that the ALJ erred in finding that plaintiff was capable of returning to her past work as a gate guard because the work is inconsistent with the reasoning level the ALJ assessed in the RFC. The ALJ found that plaintiff had the residual functional capacity to, *inter alia*, "understand, remember, and apply, detailed, but not complex, instructions, but not in a fast-paced, production type environment." AR. 27. The ALJ also found that plaintiff could perform her past work as a gate guard. AR. 30-31.

Through administrative notice, the Social Security Administration relies on the Dictionary of Occupational Titles ("DOT") to properly characterize a claimant's past work experience, and to determine whether there are jobs a claimant can do in spite of a given RFC. SSR 00-4p, 2000 SSR 8 at *3. The DOT identifies jobs by job numbers, and lists the ability requirements of each job, such as strength, exertion, and reasoning level. SSR 00-4p, 2000 SSR 8 at *4.

According to the DOT, gate guard jobs have a reasoning level of three, which requires the worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DICOT 372.667-030 (G.P.O.), 1991 WL 673099. Plaintiff asserts that plaintiff's RFC more closely resembles the DOT reasoning level two, which requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral

1  instructions. Deal with problems involving a few concrete variables in or from standardized
2  situations." DICOT 979.687-034 (G.P.O.), 1991 WL 688698.
3       In *Zavalin v. Colvin,* the Ninth Circuit compared level two and level three reasoning to
4  determine whether there was an apparent conflict between that claimant's RFC and a reasoning
5  level of three. 778 F.3d 842 (9th Cir. 2015). Defendant states that *Zavalin* does not control
6  because that case determined that there was a conflict between level three reasoning and an RFC
7  with the ability to perform simple, repetitive tasks, where here it is being compared to the ability
8  to carry out instructions. Dkt. 13, p. 4. However, in *Zavalin* the court set forth a method for
9  determining whether an RFC conflicted with a reasoning level. *Id.* at 847; *see also Rounds v.*
10 *Commissioner of Social Sec. Admin.* 807 F.3d 996, 1003 (9th Cir. 2015). *Zavalin* addressed this
11 issue as a matter of first impression and determined there was a conflict by using a "side-by-
12 side" analysis of the RFC and the definition of the reasoning level. *Id.* at 847. The court found
13 "the conflict to be plain." *Id.* at 847. When comparing plaintiff's RFC side-by-side with the
14 definitions of level two and level three reasoning, it is clear that plaintiff's RFC more closely
15 resembles level two reasoning.
16      The operative phrase in the RFC is the ability to carry out "detailed, but not complex,
17 instructions." AR. 27. Level two reasoning requires the ability to carry out "detailed but
18 uninvolved written or oral instructions," while level three requires the ability to carry out
19 "instructions furnished in written, oral, or diagrammatic form." DICOT 979.687-034 (G.P.O.),
20 1991 WL 688698. It is plain to this court that "detailed, but not complex" instructions is most
21 nearly synonymous with "detailed but uninvolved" instructions. Therefore, although there may
22 be some room for argument, it seems apparent that there is a conflict between the ALJ's
23 conclusion regarding the applicable reasoning level and plaintiff's RFC.
24

**II.   Whether the ALJ erred by failing to resolve a conflict between the VE testimony and the DOT.**

This conflict could have been resolved had the ALJ inquired of the vocational expert ("VE"), in accordance with his affirmative duty to do so.

Plaintiff asserts that the ALJ violated SSR 00-4p by failing to ask the VE if his testimony was consistent with the DOT. Dkt. 12, p. 7.  When there is an apparent conflict between the DOT and the vocational expert testimony that a plaintiff can perform a particular job, the ALJ has the affirmative duty to reconcile the discrepancy. *Zavalin,* 778 F.3d at 846 (citing *Massachi v. Astrue,* 486 F.3d 1149, 1152-53 (9th Cir. 2007) (holding that SSR 00-4p "unambiguously provides that . . . the adjudicator has an *affirmative responsibility* to ask about any possible conflict between" the DOT and VE testimony)); *see also* SSR 00-4p.

The record clearly shows the ALJ carried out his affirmative duty to inquire about any inconsistencies between the DOT and VE testimony.  The ALJ asked the VE, "[a]nd your testimony is all consistent with the DOT and SCO and your experience and training?" AR. 99. The VE replied "Yes." AR. 99.

However, the VE did not address the discrepancy between plaintiff's RFC and the level three reasoning the gate guard position required. Although the VE stated there was no conflict, there is in fact an apparent conflict between level three reasoning and plaintiff's RFC. Thus, although the ALJ performed his perfunctory duty to ask the VE whether there was a conflict, there is no indication that the VE or the ALJ took notice of the conflict between plaintiff's RFC and the reasoning level required by the gate guard position. *See Rounds,* 807 F.3d at 1004 (the ALJ erred by not recognizing the apparent conflict between the claimant's RFC and level two reasoning even where the ALJ asked if the VE's testimony was consistent with the DOT).

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 6

1 | Therefore, substantial evidence does not support the ALJ's determination that plaintiff can return
2 | to her past work.

3 |     This was not harmless error. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015)
4 | ("ALJ errors in social security are harmless if they are 'inconsequential to the ultimate
5 | nondisability determination'") (quoting *Stout v. Commissioner, Soc. Sec. Admin.,* 454 F.3d,
6 | 1050, 1055-56 (9th Cir. 2006)). The ALJ determined that plaintiff was not disabled because she
7 | is able to return to her past work as a gate guard. *See* 20 C.F.R. §404.1520(f) (a claimant is not
8 | disabled if he or she can perform past relevant work). There is not substantial evidence to
9 | support this determination because there is an apparent conflict between the reasoning level the
10 | job requires and plaintiff's RFC, and the ALJ failed to reconcile the conflict with the VE's
11 | testimony.

12 |     Plaintiff also asserts that the vocational expert failed to identify the DOT job number for
13 | the plaintiff's past job as a gate guard. Dkt. 12, p. 8.  This is not the case. The hearing transcript
14 | shows clearly that the VE asked clarifying questions regarding the nature of plaintiff's past work.
15 | AR. 54.  The VE asked plaintiff, "You were working at a gate with a headset . . . checking cargo
16 | coming and going. Correct?" AR. 54. Plaintiff responded, "Right." AR. 54.  The VE then
17 | characterized plaintiff's past work as that of a gate guard, stating "it's not a match exactly, but it
18 | is close. DOT 372.667-030." AR. 54.  Therefore, the VE did not fail to identify plaintiff's past
19 | work by DOT number.

20 |     **III.    Whether the ALJ erred in rejecting the opinion of examining psychiatrist Dr.
21 |     Moslin, M.D.**

22 |     Plaintiff alleges that the ALJ erred in rejecting the opinion of examining psychiatrist, Dr.
23 | Moslin. Dkt. 12, p. 9. Dr. Moslin performed a psychiatric evaluation and functional assessment,
24 | and reviewed plaintiff's medical records. AR. 630-35. Dr. Moslin found that plaintiff could do

simple tasks, but that depression would impede her ability to be more complex in her interactions; plaintiff would have difficulty listening and taking orders from a supervisor; she would be intolerant of others and have conflicts with coworkers and the public; she would not appear at work reliably; and that the stress of working would further debilitate her. See AR. 635.

The ALJ assigned little weight to Dr. Moslin's opinion and relied on the conclusions of the state agency examiners. AR. 29-30. An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831).

The ALJ assigned little weight to Dr. Moslin's opinion because it was not consistent with the mental status exam findings. AR. 30. The ALJ noted that "she was able to recall two of three items after five minutes, and recalled the third with a clue," but did not acknowledge that the examiner noted that this was evidence that her short-term memory was limited. AR. 30, 633. The ALJ also noted that plaintiff was able to "spell world forward and backward," but failed to note that the examiner noted that plaintiff was "obviously distracted and at times confused." AR. 30, 634.  The ALJ also rejected the opinion because it was inconsistent with the longitudinal record and the "repeatedly [] normal mental status examination findings[.]" AR. 30. However, earlier in his decision, the ALJ noted that plaintiff's mental status examinations seemed to vary, and that her symptoms waxed and waned. AR. 25-26.  Simply because a claimant sometimes reports the

absence of a symptom does not contradict other occasions where the symptom is reported, as symptoms and limitations can wax and wane. *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) ("'Occasional symptom-free periods…are not inconsistent with disability'") (quoting *Lester*, 81 F.3d at 833). The ALJ did not explain why his own conclusions regarding the mental status exams, rather than those of the doctors, are correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Therefore, the ALJ did not give specific and legitimate reasons for rejection Dr. Moslin's opinion. This was not harmless error because additional limitations may have been added to the RFC if Dr. Moslin's opinion had been given more weight, which may have changed the outcome of the case.

**IV.    Whether remand for award of benefits is the appropriate remedy.**

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman,* 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292).

Here, there are outstanding issues that must be addressed. The ALJ erred by failing to reconcile plaintiff's RFC with a reasoning level of two with her past work experience which appears to require level three reasoning. When determining that plaintiff cannot return to her past

1  work, this Court cannot determine from the record whether plaintiff would be found disabled

2  because the ALJ did not continue to the fifth step of the sequential disability analysis. At the fifth

3  step, the Commissioner bears the burden of proving that there are other jobs plaintiff can do in

4  the national economy. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also* 20 C.F.R.

5  §§ 404.1520(g), 404.1594(f)(8).

6      Plaintiff asserts that the ALJ stated during the hearing that plaintiff would be disabled if

7  the analysis continued to step five. The ALJ announced at the hearing that if the analysis

8  continued to step five, the grid rule application would be involved due to plaintiff's age. AR.

9  100. The ALJ announced that rule 201.06 would apply to a person of plaintiff's age and

10  education at the sedentary level. AR. 100. It appears clear that pursuant to rule 201.06, a person

11  of plaintiff's profile—a person of advanced age, with at least a high school education, and who

12  has past skilled or semi-skilled work—is per se disabled. 20 C.F.R. § 404, subpart P, Appendix

13  2, § 201.06.  However, it is difficult to discern from the hearing transcript exactly what the ALJ

14  meant, and the analysis is not included in the written decision. Therefore, a finding of fact is

15  required before applying the grid rule to plaintiff's case.

16      Moreover, the ALJ improperly rejected a medical opinion. However, if the opinion were

17  credited in full, it is not clear to this Court which limitations would be added to the RFC, and

18  whether those limitations would lead to a finding that plaintiff is disabled. Therefore, remand is

19  the appropriate remedy.

20

21  CONCLUSION

22      Based on these reasons, and the relevant record, the undersigned recommends that this

23  matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to

24

1  the Acting Commissioner for further proceedings consistent with this Report and

2  Recommendation.  **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

3  Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

5  6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

6  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

7  imposed by Rule 72(b), the clerk is directed to set the matter for consideration on April 12, 2019,

8  as noted in the caption.

9  Dated this 28th day of March, 2019.

J. Richard Creatura
United States Magistrate Judge